# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 5573 | **DATE** | 9/28/2012 |
| **CASE TITLE** |  | In Re: Subpoena to Creeden & Associates, Inc. | |

**DOCKET ENTRY TEXT**

The motion to enforce the subpoena [1] is granted in part and denied in part as detailed below.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Before the Court is Movant Hy-Ko Products Company's ("Hy-Ko") motion to enforce its subpoena against third-party respondent Creeden & Associates, Inc. ("Creeden") in antitrust litigation in the Northern District of Ohio. 10-cv-992-DDD. For the following reasons, the motion is granted in part and denied in part.

### I. BACKGROUND

Hy-Ko is a supplier of replacement key "blanks" (uncut keys) and automatic key duplication machines to retailers. It has sued its competitors Kaba Ilco ("Ilco") and the Hillman Group, Inc. ("Hillman") in the Northern District of Ohio, alleging antitrust violations. Specifically, it alleges Hillman and Ilco have agreed to divide the replacement key blanks market, with Hillman getting the big box market and Ilco taking the franchise and independent market.

Many Ace Hardware stores buy their blanks through a national Ace Hardware buying cooperative, which used to purchase its blanks from Ilco. In 2003, Hy-Ko won that contract away from Ilco. Ilco hired Creeden to sell its blanks to individual stores that were using Hy-Ko products. Hy-Ko has alleged in that litigation that Ilco engages in predatory pricing, exclusive dealing arrangements and misrepresentations about Hy-Ko's products. Hy-Ko seeks documents from Creeden that might prove these allegations, particularly any documents reflecting the agreed-upon market division between Ilco and Hillman. Hy-Ko seeks a number of documents from Creeden, which is not party to the Ohio litigation.

Hy-Ko brought this action to enforce the subpoena after Creeden, located in this district, refused to produce the documents requested, citing various objections.

### II. LEGAL STANDARD

The burden of demonstrating an undue burden is borne by the movant. *WM High Yield v. O'Hanlon*, 460 F.Supp. 2d 891, 895 (S.D. Ind. 2006). The factors in considering an undue burden are: relevance, the need of the party for the documents, the breath of the documents, the time period covered, the particularity of the documents requested, the burden imposed and whether the party subpoenaed is a non-party. *Id.*

"Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitle to *special weight* in evaluating the balance of competing needs." *United States ex rel Tyson v. Amerigroup Ill., Inc.*, No. 02-C-6074, 2005 U.S. Dist LEXIS 24929, at *14 (N.D. Ill. Oct. 21, 2005) (emphasis added).

Where third-parties are the subject of discovery requests, the courts will sometimes shift or partially shift the costs of discovery. *See Butler v. Rigsby*, No. 96-2453 Section "R" (5), 1998 U.S. Dist. LEXIS 4618, at *9 (E.D. La., April 7, 1998)

### III. ANALYSIS

#### A. Subpoena Objections

Creeden objects to the subpoena Hy-Ko served on the grounds of irrelevancy, broadness, and burden. It also argues the protective order in the Ohio case does not protect its interests. It also objects that much of the information sought (such as pricing) is proprietary information that would expose its trade secrets to a direct competitor, Hy-Ko. Creeden argues it is unfair to force a third party with no dog in the fight to "devote a significant number of its 30 employees to the task of gathering, reviewing and producing documents. Creeden estimates that producing the documents requests, as is, could take Creeden hundreds of man-hours as well as cost Creeden tens of thousands of dollars in vendor and legal fee costs." Creeden Br. 9 (internal citations omitted). Hy-Ko retorts that Creeden wants to have it both ways: it argues the pricing and marketing information Hy-Ko seeks is proprietary, but then alleges that Ilco sets all pricing. Hy-Ko alleges that Creeden has refused to seriously discuss a modified protective order that would address Creeden's alleged concerns. Finally, it alleges that Creeden has dismissed most of the requests with the contention that Hy-Ko can get that information from Ilco.

Creeden's credibility suffers from the outset by having produced absolutely no documents to Hy-Ko. Parties may reasonably disagree over the scope of a subpoena, but it is still, nonetheless, a subpoena, which is a command of the Court. Turning over nothing in response to that command suggests less than a full willingness to cooperate.

The Court is, in general, not convinced by Creeden's relevance claims. Most of Hy-Ko's requests seem calculated to produce admissible evidence. Nor is the "get it from Ilco" argument persuasive. True, some production may be duplicative of what Ilco produces. But it is impossible for Hy-Ko to know which documents are deplicative until it receives them. And the Court agrees that Creeden undercuts its argument regarding proprietary information with the contention that Ilco sets all the prices.

The burden argument is more persuasive. Creeden is a relatively small company and, more importantly, is not a party to the suit. Creeden also deserves a chance to protect its interests with its own protective order if it genuinely believes the one in place does not do so. It also could be quite burdensome if Creeden's representatives had to fly to Ohio every time they objected to turnover or use of particular use of a document. This Court has no power over what actions the Ohio federal court takes, but it will attempt to address these concerns as best it can.

Dealing with Creeden's specific objections, the Court rules as follows on specific requests:

**Request No. 1:** Granted with the following limitation. As the Court reads this request, it does not mandate the turnover of all market research in Creeden's possession (as Creeden claims) – just that research and other

documents reflecting Creeden's relationship with Ilco for the sale of Ilco key blanks. Creeden is still free to object to production of certain documents but must do so through production of a privilege log.

**Request No. 5:** Granted with the following limitation. Contrary to the request's wording, the requests *is* limited to (a) communication with Ilco or anyone acting on its behalf (b) communications with Hillman or anyone acting on its behalf (c) communications with buying cooperatives for Ace, Do-it-Best, True Value and Orgil or those francises' individual retailers. Creeden is still free to object to production of certain documents but must do so through production of a privilege log.

**Requests No. 6-13:** Granted, subject to any objections lodged through production of a privilege log.

### B. Protective Order

All production ordered above is subject to Hy-Ko and Creeden reaching an agreed protective order after good-faith negotiations. Particular attention should be paid to Creeden's concerns regarding protection of proprietary information, notification regarding use in Ohio of Creeden's documents and the publicizing of documents in that Ohio action.

### C. Cost-Shifting

Particularly where third-party deponents are involved, cost-shifting may be appropriate, rather than simply denying the requested discovery. *See Rigsby*, *supra* and *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571-572 (N.D. Ill. 2004). The *Wiginton* court used the *Rowe* factors in determining how much cost should be shifted. *Id.* at 572 (citing *Rowe Entm't v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002). Those factors are (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.

Factor No. 1 weighs in favor of Creeden. The requests are calculated to produce discoverable evidence, but certainly could have been more narrowly tailored. Factor No. 2 weighs in favor of Hy-Ko. If Ilco is engaging in anti-competitive behavior, it would likely be reflected in how its sales agent operates. Factor No. 3 weighs somewhat in favor of Creeden, as Ilco undoubtedly has some of the requested information. Factor No. 4 is undetermined. Presumably Creeden maintains this information for the purpose of serving its client, Ilco. Factor No. 5 is the least important, because it almost always benefits the requesting party more, as it does here. *Wiginton* at 577. This factor is neutral. Factor No. 6 is undetermined, but Creeden estimates it at "tens of thousands of dollars." This factor weighs in Creeden's favor. Factor No. 7 weighs (before any cost-shifting) squarely in Creeden's favor. Hy-Ko has no incentive to control costs, at this point. Factor No. 8 is partially undetermined: there has been no discussion of Hy-Ko's resources, but it is clear that Creeden has limited resources.

In view of all these factors, something must be done to incentivize Hy-Ko to further restrict its requests and limit Creeden's costs while still allowing it the important discovery it seeks.

The Court orders Hy-Ko to bear 60 percent of Creeden's staff research and production costs (including employee salaries) and 30 percent of Creeden's legal costs. The lower legal percentage is a reflection of what the Court believes was Creeden's recalcitrance to meaningfully participate in legal negotiations concerning discovery thus far. This redistribution will put some of Hy-Ko's skin in the game without so severe a shift as to encourage Creeden to run up expenses in an effort to get Hy-Ko to abandon its quest. The lower legal fee-shifting amount is also an attempt to get Creeden to object only to those points it really cares about.

## STATEMENT

Creeden should also attempt to engage in a more meaningful appraisal of costs than it has performed so far, and to keep Hy-Ko appraised of the running price tag (in advance of incurring costs, if possible) so that both parties can resolve this discovery dispute as expeditiously as possible. Should costs escalate, the parties are free to return to this Court to request an adjustment, but the Court discourages it in the belief that both parties, with the proper incentives now in place, can quickly come to a resolution.

## IV. CONCLUSION

The motion is granted in part and denied in part as stated above.